**Nikki BRINDLE, Appellant/Defendant,**

v.

**Patrick J. ARATA, Appellee/Plaintiff.**

**No. 02A05–1004–SC–239.**

Court of Appeals of Indiana.

Dec. 7, 2010.

Nikki Brindle, Warsaw, IN, Appellant Pro Se.

Brian C. Heck, William J. Barkimer, Beckman Lawson, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Nikki Brindle appeals from the trial court's determination that certain funds in her bank account were subject to attachment to satisfy a judgment in favor of Appellee/Plaintiff Patrick Arata. Because we conclude that the student loan funds at issue here may not be attached to satisfy a judgment, we reverse.

## FACTS

On June 4, 2009, Brindle and Arata entered into an agreed judgment in favor of Arata on a debt incurred for provision of legal services. On March 11, 2010, Arata initiated a proceeding supplemental and issued garnishment interrogatories to National City Bank, at which Brindle had a deposit account. On March 22, 2010, National City responded that Brindle had $3367.01 in her account at the time the interrogatories were filed.

Meanwhile, on March 17, 2010, Brindle had filed an exemption claim and had requested a hearing. At the hearing, Brindle introduced a voucher, dated February 10, 2010, from the Academy of Art University ("the University"), which indicated that she would be receiving a check from the University for $3268.00. Brindle testified that she had received a student loan that was paid directly to the University and that the voucher represented funds left over from her loan after paying her tuition. Brindle's bank records indicated a March 1, 2010, deposit into her account for $3271.00, which she indicated was the money mentioned in the voucher. On March 26, 2010, the trial court denied Brindle's exemption claim in part, ordering National City Bank to send to the Allen County Clerk of Courts all funds in Brindle's account save $300.00.

## DISCUSSION AND DECISION

Where, as apparently happened here, the trial court *sua sponte* enters specific findings of fact and conclusions, we review its findings and conclusions to determine whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind.Ct.App.2005). We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake was made. *Id.* We neither reweigh the evidence nor assess the witnesses' credibility, and consider only the evidence most favorable to the judgment. *Id.* Further, "findings made *sua sponte* control only … the issues they cover and a general judgment will control as to the issues upon which there are no findings. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

The underlying facts of this case do not appear to be in dispute, leaving only a question of pure law before us, namely, whether student loan funds retain their status as such once they are deposited into a personal account containing other funds.

The interpretation of a statute is a question of law for the courts and is reviewed under a *de novo* standard. The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. However, if a statute is susceptible to more than one interpretation, it is ambiguous. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. In doing so, courts

must examine the whole statute and not give too much meaning to any particular word or words in isolation, but should extract the purpose of the legislation and avoid an unjust or absurd result. *Ind. Bureau of Motor Vehicles v. Orange,* 889 N.E.2d 388, 390 (Ind.Ct.App.2008) (citations and quotation marks omitted).

United States Code Title 20, section 1095a(d) provides, in part that

> no grant, loan, or work assistance awarded under this subchapter and part C of subchapter I of chapter 34 of Title 42, or property traceable to such assistance, shall be subject to garnishment or attachment in order to satisfy any debt owed by the student awarded such assistance, other than a debt owed to the Secretary and arising under this subchapter and part C of subchapter I of chapter 34 of Title 42.

The trial court concluded that Brindle's student loan funds lost their exempt status when she deposited the funds in her private account, on the basis that there was no federal law specifically saying that they retained their exempt status when so disposed of. We do not reach the same conclusion.

Simply put, the plain language of section 1095a exempts student loan funds and property traceable to those funds from garnishment or attachment, and there is no provision to which either party points us, or of which we are aware, that terminates this status, whether by deposit in a personal bank account or otherwise. Moreover, neither party directs our attention to any case law that might support a conclusion that deposit in a bank account

automatically terminates the exempt status of student loan funds under federal law.[1]

We believe that a contrary conclusion would effectively eviscerate the protections of section 1095a and render it all but meaningless, a result we doubt was intended by Congress. If the protections of section 1095a were lost upon deposit into a personal bank account, one is left to wonder what the point of the section is, when almost every recipient of student funds will surely do just that. We cannot imagine that Congress wishes those who receive student loans to stuff their mattresses with their rent money in order to prevent judgment creditors from attaching it. We conclude that the trial court erred in ruling that Arata could attach student loan funds that Brindle deposited into her bank account.

Arata relies on the Indiana Supreme Court's decision in *Brosamer v. Mark,* 561 N.E.2d 767 (Ind.1990), in which it concluded that the anti-alienation provision of the Employee Retirement Income Security Act of 1974 ("ERISA") did not prevent garnishment of retirement funds after they were deposited in the pensioner's bank account. *Id.* at 771. *Brosamer,* however, is inapposite. The federal statutes at issue in Brosamer, only provide that "benefits provided under the plan may not be assigned or alienated'" and do not extend any of the protections from collection afforded to student loans. *Id.* at 768 (quoting 29 U.S.C. § 1056(d)(1)). *Brosamer* simply does not apply here. In the end, not being able to *give* something away is quite different from having it protected

---

1. Both parties mention *Clary v. Morris,* 1995 WL 140835 (Ohio Ct.App.1995), and Arata cites it as standing for the proposition student loan funds above and beyond those needed for tuition are not exempt from garnishment. *Id.* at *2. *Clary,* however, as an unpublished decision, appears to have no precedential value, and would not be binding on us even if it did. In any event, the *Clary* court was dealing with an Ohio statute that did not exempt from garnishment student loan funds over and above those needed for tuition. *Id.*

from being *taken* away. Arata's reliance on *Brosamer* is unavailing.

We reverse the judgment of the trial court.

DARDEN, J., and BROWN, J., Concur.