**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 20 2014, 8:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ALADEAN M. DEROSE**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES P. KNEPP**
**ANDREA KUREK SLAGH**
Hahn, Knepp and Slagh
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: NANCY J. MCMILLEN            )
TESTAMENTARY TRUST,                )
                                   )
DONNA M. MCMILLEN,                 )
                                   )
    Appellant-Petitioner/Beneficiary,  )
                                   )
           vs.                         )  No. 71A03-1308-TR-334
                                   )
THOMAS KANE,                       )
                                   )
    Appellee-Respondent/Trustee.       )

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
Cause No. 71J01-1304-TR-3

**May 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

The St. Joseph Probate Court denied a petition filed by Donna M. McMillen ("Donna") asking the trial court to remove Thomas Kane ("Kane" or "the Trustee") as trustee of a testamentary trust ("the Trust) established by the will of Donna's mother, Nancy J. McMillen ("Nancy"), or in the alternative, to order the Trustee "to pay a fixed sum each month adequate to cover all of Donna's reasonable living expenses plus the cost of major medical insurance." *Appellant's App.* at 17. On appeal, Donna raises the following restated issues:

I. Whether the trial court abused its discretion in denying Donna's request to remove the Trustee;

II. Whether the trial court erred by excluding evidence of a 2008 handwritten document—apparently prepared by Nancy on August 25, 2008—to show Nancy's intent regarding Donna's care under the Trust; and

III. Whether the trial court abused its discretion in failing to set minimal guidelines ordering the Trustee to pay for Donna's support and medical care under the Trust.

We affirm.

## FACTS AND PROCEDURAL HISTORY

This is the second time that Donna has filed a petition to remove Kane as Trustee of the Trust. Nancy executed her "Last Will and Testament" on October 21, 1999. In her will, Nancy named her brother, Kane, as her personal representative and the trustee of a testamentary trust to be established for the sole benefit of her daughter Donna. The pertinent portions of Nancy's will provided:

3.1 I hereby request that my Personal Representative sell the remainder of my estate property, including my home, and that the net proceeds, after the payment of debts, taxes and the administration of my estate, be held in

2

Trust and prudently invested for the benefit of my daughter, Donna McMillen, hereinafter "my daughter."

3.2     The Trustee shall pay all of the net income of the Trust to my daughter in convenient installments, not less frequently than quarterly.

3.3     The Trustee shall distribute so much of the trust principal to my daughter, as [sic] the Trustee's sole and absolute discretion for her health and support taking into consideration all other income available to my daughter.

. . . .

3.5     No interest in any Trust created by this instrument shall be transferable or assignable to my daughter, or be subject during her life to the claims of her creditors, including alimony, property settlement, or support claims.

3.6     If my daughter dies before the termination of a Trust created for her benefit, the balance remaining in said Trust shall be distributed to my brother, Thomas T. Kane.

3.7     The Trustee shall provide an accounting to my daughter each year.

3.8     The Trustee shall distribute all remaining income and principal to my daughter no later than ten (10) years after my death.

*Appellant's App.* at 11-12.

Kane, who was attorney-in-fact for his and Donna's father, moved $132,800 of his father's money into Nancy's account prior to her death. *In re Estate of McMillen*, No.71A03-1107-ES-324, at *2 (Ind. Ct. App. May 10, 2012) (hereinafter, "*McMillen I*").[1] This was done as part of the father's estate plan. Nancy died on June 28, 2010, and her will was admitted to probate without objection. Kane, who was the personal representative of Nancy's estate, planned to remove this money from the estate on the basis that it was

---

[1] Both parties agree that *McMillen I*, an unpublished memorandum decision, is relevant to the instant appeal. *Appellant's Br*. at 1; *Appellee's Br*. at 1.

not Nancy's money and should be used for the father's care. *Id.* Kane abandoned this plan after learning that it would be illegal to move the money. *Id.*

After her mother's death, Donna, who lived in Oregon, temporarily moved into her mother's home in Indiana to help prepare it for sale. *Id.* As personal representative, Kane paid for the home's real estate taxes, utilities, and insurance, and Donna submitted invoices to the estate for reimbursement of costs she incurred for the home's repair and maintenance. *Id.*

Donna filed a verified petition to remove Kane as personal representative of Nancy's estate. Later, Donna filed her first petition to remove Kane as Trustee. In her petition she argued that Kane: (1) had an incentive as contingent beneficiary to distribute as little as possible from the Trust; (2) breached the Trustee's duty to maintain Trust property when he attempted to remove $132,800 from the estate; and (3) had such a hostile relationship with Donna that he should be removed as Trustee. *Id.* at *3, *4. Following a hearing, the probate court denied Donna's petition to remove Kane in either capacity.

Donna appealed, arguing that Kane should be removed as Trustee, and the Trust principal should be paid out. In support of her claims, Donna referred to Nancy's 2008, handwritten, non-probated codicil ("the Codicil"),[2] which gave the residuary of Nancy's estate directly to Donna. *Id.* at *3. In *McMillen I*, we rejected the use of the Codicil on the basis that Donna had neither offered the Codicil during probate nor objected to the probate

---

[2] While Nancy's 2008 handwritten document was titled "Last Will and Testament of Nancy J. McMillen," the following language reveals that it was intended as a codicil to Nancy's will: "The former will and codicils that I [Nancy] have previously made [are] still in existence. This will is to make sure my request is granted." *Pet'r's Ex.* 3.

4

of the 1999 will. Accordingly, we found the Codicil was irrelevant to the Trust created under the will. *Id.* We also opined that the Trustee's failure to distribute the principal of the Trust was not evidence of Kane's attempt to maximize the value of the Trust as the contingent beneficiary, but instead, was "consistent with the language of the will creating the trust, *i.e.* that Donna receive income from the trust for no more than ten years after Nancy's death, at which time the entire value of the trust was to be distributed to Donna." *Id.* Finally, we found that Kane's attempt to remove $132,800 from the Trust reflected a mere misunderstanding of the law, which was not a sufficient basis to remove him as Trustee. *Id.* We affirmed the trial court's refusal to remove Kane as Trustee. *Id.* at *4.

Nancy's estate was closed "on or around January 30, 2012." *Appellant's App.* at 15. On that date, Kane began undertaking his role as Trustee of the Trust. *Id.* After its first year of existence, and as of December 31, 2012, the Trust had an approximate value of $393,000. *Id.* at 34. Donna filed to have the Trust docketed in the St. Joseph Probate Court. *Id.* at 15. The instant action commenced on April 23, 2013, when Donna filed a "Petition for Removal of Trustee or for Payment of Minimal Support and Health Expenses, and Attorney Fees." *Id.* at 8-9, 15-18. Donna cited the following reasons for Kane's removal:

> 4. The Trust contains a provision that creates an implicit conflict, specifically, Thomas is the contingent heir of the Trust, and he must distribute all of the Trust income and principal to Donna "no later than 10 years after [Nancy's] death." Under this provision, Thomas can choose to distribute little to Donna, thereby maximizing his contingent share of the Trust should Donna die before June 28, 2020.

> 5 On August 25, 2008, Nancy executed a Codicil to her Will which at least provides evidence of how Nancy's Testamentary Trust should

be interpreted and administered to provide financial assistance to Donna. That Codicil eliminated the Trust and transferred the entire Residuary Estate directly to Donna, indicative of Nancy's confidence that Donna could manage her inherited funds without assistance. The Codicil also eliminated any contingent interest of Thomas Kane in Nancy's Estate.

*Id.* at 16. Donna also maintained that Kane had failed and refused "to treat Donna as a fiduciary" when he refused to provide Trust money to pay for, among other things, Donna's monthly expenses while she was unemployed, her health insurance policy, new tires for her car, Donna's attorney fees, and the care of Nancy's cat, as required by the 1999 will. *Id.* at 16-17.

Following an evidentiary hearing, the trial court issued its order on July 22, 2013, denying Donna's request for removal of the Trustee, denying her request that the trial court establish payment guidelines for the Trust payment, but granting her the cost of travel expenses to be paid from the Trust. Donna now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

### I. Removal of Trustee

Where the trial court enters specific findings of fact and conclusions *sua sponte,*[3] we apply the following two-tiered standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005). The trial court's findings and conclusions will be set aside only

---

[3] Here, both parties declined the trial court's invitation to submit proposed findings of fact and conclusions thereon. *Tr.* at 198. In fact, the Trustee's attorney even stated, "I think we're comfortable standing with what you find." *Id*. at 199.

6

if they are clearly erroneous, *i.e.*, when the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* We do not defer to conclusions of law, however, and evaluate them *de novo. Davis v. Davis*, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). Further, we recognize that findings made *sua sponte* control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Brindle v. Arata*, 940 N.E.2d 320, 321 (Ind. Ct. App. 2010). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

We define the clearly erroneous standard based upon whether the party is appealing a negative judgment or an adverse judgment. *Woodsmall v. Lost Creek Twp. Conservation Club, Inc.*, 933 N.E.2d 899, 902 (Ind. Ct. App. 2010), *trans. denied*. When, as here, the party who had the burden of proof at trial appeals, that party appeals from a negative judgment and will prevail only if she establishes that the judgment is contrary to law. *Id.* A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

Donna contends that the trial court abused its discretion in denying her petition to remove Kane as Trustee of the Trust. *Appellant's Br*. at 20. Pursuant to Indiana Code section 30-4-3-22(a)(4), "[a] beneficiary of a trust may maintain an action . . . to remove a trustee for cause and to appoint a successor trustee." Indiana Code section 30-4-3-29(a)(1)

also provides, "A trustee may be removed . . . [b]y the court." The decision to remove a trustee is within the sound discretion of the trial court. *Massey v. St. Joseph Bank & Trust Co.,* 411 N.E.2d 751, 753 (Ind. Ct. App. 1980). When reviewing a trial court's decision for an abuse of discretion, we will not reweigh evidence or judge the credibility of the witnesses. *See Swartz v. Swartz,* 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999).

Donna asserts that the pivotal issue in the instant case is "whether Thomas Kane is so hostile toward [her] that he cannot fairly discharge his duties as her trustee." *Appellant's Br.* at 14. Donna argues that it was "reversible error" for the trial court to fail "to examine the issue of hostility as applied to trust administration for Donna's health and support," especially in light of the substantial evidence of "Kane's hostility toward Donna and his consistent denial of her modest requests for support and health assistance." *Id.* at 15.

In its July 2013 order, the trial court made the following findings regarding Kane's hostility:

> 1. The Petitioner, Donna McMillen, filed a Petition to Redocket the Trust and to remove Personal Representative [sic], Thomas Kane, alleging that the hostility between Petitioner and Respondent requires that Respondent be removed;
>
> 2. Petitioner raised these issues previously and did not prevail in either the Trial Court or the Appellate Court[.]

*Appellant's App.* at 5. Donna argues that the trial court erred in finding that the issue of hostility was "the law of the case" because, in contrast to *McMillen I*, her complaint in the instant action is based on Kane's actions toward her *after* he commenced his duties as Trustee. *Appellant's Br.* at 15.

8

The law-of-the-case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts. *Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind. Ct. App. 2004) (citing *Cha v. Warnick,* 476 N.E.2d 109, 114 (Ind. 1985), *cert. denied*, 474 U.S. 920 (1985)). While conceding that Kane's strict interpretation as to what should be paid to Donna under the Trust became clearer subsequent to *McMillen I*, we agree with the trial court that the hostility Donna describes as the basis for removing Kane is based on the same mistrust Kane revealed toward Donna in *McMillen I*.

In her brief, Donna cites to the following facts as background for explaining Kane's hostility toward her:

> In a letter to Nancy [dated August 5, 2004] concerning the dispute over their parents' care, Thomas Kane expressed his opinion about his niece, Donna: "No amount of college and certificates will change unstableness and total lack of common sense and . . . Donna fall[s] in to that position. . . . They and [Donna and sister Debbie] both also do not know right from wrong."

> Nine years later, and at the trial of this case, Thomas Kane's low opinion of Donna had not changed. He openly claims Donna is irresponsible, dishonest, a liar, unstable, untrustworthy and that she lacks reasoning power. Donna is not responsible, claims Mr. Kane, because she does not work and spends money she doesn't have. Donna's employment history in his opinion is "disastrous." He claims Donna was dishonest because she received student loans even though her father paid a portion of her education, (Donna says her father paid no more than $5,000 which went directly to the school). Thomas Kain [sic] says Donna is unstable because "she makes very, very poor decisions," and as the sole examples, he cited Donna's desire to pay off the mortgage of her Oregon home with her inheritance, and her change in career plans. Donna and Thomas [Kane] have not spoken to each other since about July, 2011.

*Appellant's App.* at 2-3. Kane's mistrust of Donna has remained essentially the same since 2004, at which time the seeds of mistrust between the two had already been planted.[4]

Our courts have held that hostility between the trustee of a trust and its beneficiaries is not a per se ground for removal of the trustee. *Massey*, 411 N.E.2d at 758. "Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust." *In re Guardianship of Brown,* 436 N.E.2d 877, 886 (Ind. Ct. App. 1982) (quoting Restatement (Second) of Trusts § 107 cmt. (b) (1959)). Indeed, "because a trust is frequently imposed to keep the trust principal out of the beneficiaries' hands, some hostility between the trustee and the beneficiaries is almost to be expected." 28 Ind. Law Encyc. *Trusts* § 87 (citing *Maley v. Citizens Nat'l Bank of Evansville,* 120 Ind. App. 642, 655, 92 N.E.2d 727, 733 (1950); *Wilson v. Edmonds,* 78 Ind. App. 501, 506, 136 N.E. 48, 49 (1922)). As our court explained in *Massey*:

> "Trusts are usually created for the purpose of withholding from the beneficiaries or other interested parties the control and disposition of the principal of the trust fund for reasons which appear sufficient to the settlor, and they are not as a general rule regarded with satisfaction by the persons who are thus deprived of the possession of the trust estate; and if the precedent here sought to be established should prevail, it would be easy for the parties, who would profit by a dissolution of the trust, to create a condition which would render such a result attainable . . . ."

*Massey*, 411 N.E.2d at 758 (quoting *Wilson,* 78 Ind. App. at 506, 136 N.E. at 49).

---

[4] Our court in *McMillen I* referenced some justification for Kane's mistrust. During the probate of Nancy's estate, Kane reimbursed Donna for each invoice submitted for the repair and maintenance of Nancy's home. Shortly before the hearing in *McMillen I*, however, Kane refused to pay a $900 invoice that Donna had submitted for lawn work. "Kane claimed that he had confirmed that the lawn had not been properly mowed by Donna or anyone else. Thereafter, Kane informed Donna that he would not pay any other expenses she submitted to the Estate unless he preapproved them." *McMillen I* at *2.

Kane is admittedly frugal with the money in the Trust. However, these actions are also consistent with a proper administration of this Trust for Donna's benefit. Kane paid "all of the net income of the Trust to [Donna] in convenient installments, not less frequently than quarterly," in compliance with Section 3.2 of Nancy's will. *Appellant's App.* at 11. Kane has also made sure that "[n]o interest in any Trust created by this instrument [,the will,] shall be transferable or assignable to my daughter, or be subject during her life to the claims of her creditors, including alimony, property settlement, or support claims," a condition set forth in Section 3.5 of Nancy's will. *Id.* This is of particular importance since Donna's ex-spouse embezzled much of the $46,000 that was left to Donna from her mother's life insurance policy. *Tr.* at 136. Additionally, the Trustee paid Donna $1,000 per month and reimbursed her for any out of pocket health costs upon verification of those costs. These acts were done in compliance with Section 3.3 of the will, requiring distribution of "so much of the trust principal to [Donna in] the Trustee's *sole and absolute discretion* for her health and support taking into consideration all other income available to my daughter." *Id.*[5] Pursuant to the terms of the Trust, the Trustee will be in compliance with the Trust as long as he "distribute[s] all remaining income and principal to [Donna] no later than ten (10) years after [Nancy's] death." *Id.*

## II.     The 2008 Document

Donna maintains that the trial court committed reversible error when it refused to admit Petitioner's Exhibit 3, Nancy's Codicil, as evidence of Nancy's intentions toward

---

[5] Donna does not claim that the Trustee has failed to provide her with an accounting as required under Section 3.7 of the 1999 will. *Appellant's App.* at 12.

Donna under the Trust. During the hearing, Kane testified that he disbursed the Trust property to Donna pursuant to his understanding of Nancy's intent, as discerned from discussions Kane had with Nancy and letters he received from her prior to 2008. *Tr*. at 40-41. From these communications, Kane believed that Donna had a "disastrous" employment history and was dishonest. *Id*. at 96, 97. Kane suspected that Donna's employment history was so sporadic that she would not be entitled to social security. Accordingly, Kane understood that, as Trustee, he was responsible to keep money in the Trust for ten years to ensure that Donna had money later in life.

To counter the perception that Nancy had no confidence in Donna, Donna proffered the Codicil. The Codicil revealed that Nancy intended to leave "her complete estate and everything I own" to Donna. *Pet'r's Ex*. 3. While admitting that the Codicil was invalid, Donna maintained that it was evidence of Nancy's intent that the Trust be interpreted liberally with regard to payments made by the Trustee on Donna's behalf. Kane objected to the admission of the Codicil.

After discussion with the parties, the trial court concluded that a proper foundation had not been laid in the instant case to admit the Codicil. *Tr*. at 81. The lack of foundation notwithstanding, the trial court recognized the existence of the Codicil because: (1) it had already been admitted and discussed during *McMillen I*; and (2) the parties in the instant action had already discussed its contents. The trial court reasoned:

> [I]f I hear the parties correctly, I don't have the ability to pull [Petitioner's Exhibit 3] for some reason. . . . [I]f it appeared to be entered, I think it's a bit moot. We clearly had talked about it, . . . I think its surplusage to enter it again as a new exhibit. We've talked about it. We've used it for the purposes that we needed. . . .

*Id.*

The pertinent portion of the July 2013 Order provided:

3.　　Petitioner relies on the 2008 document that she claims is the proper will or reveals the true intent of Nancy McMillen.

4.　　These issues were also previously litigated and the 2008 document was not probated and thus is not relevant to the trust created under the will that was submitted to probate. Evidence reveals that Respondent acted consistent with the language of the will creating the trust[.]

*Appellant's App.* at 5. As a result of the trial court's decision, Donna contends that she was denied a fair trial.

In her brief, Donna argues that

Nancy's intent expressed in her defective codicil . . . is highly probative of how Donna's reasonable requests for health and support during periods of her unemployment or low income should be addressed by a true fiduciary, one who looks only to the needs of Donna. The document is also highly probative of how the ambiguity in Trust Section 3.8, "Termination," should be resolved.

If Nancy did not believe a trust was required in 2008, surely she would have approved termination of the trust before 2020, something Thomas Kane will not do under any circumstances. If Nancy believed a trust was not required for Donna, she never would have rejected Donna's request for household expense money at a time when Donna had no income, nor Donna's multiple requests for payment of health expenses, nor replacement of Donna's bald tires, and Nancy would have approved veterinary expenses incurred to care for Nancy's own cat.

*Appellant's Br*. at 23.

From the above language, it is unclear whether Donna is claiming that the trial court abused its discretion when it failed to admit the Codicil or that the trial court erred by rejecting the Codicil as a valid source for interpreting Nancy's intent under the Trust.

13

Regardless of which argument Donna is making, both claims fail. Decisions regarding the admission of evidence are within the discretion of the trial court. *Lumbard v. Farmers State Bank*, 812 N.E.2d 196, 201 (Ind. Ct. App. 2004). An abuse of that discretion occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court or if the trial court's decision is contrary to law. *Id*. Even if a trial court errs in a ruling on the admissibility of evidence, this court will only reverse if the error is inconsistent with substantial justice. *Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd. P'ship*, 768 N.E.2d 463, 466-67 (Ind. Ct. App. 2002), *trans. denied*.

We are uncertain from the record before us whether the Codicil was admitted or not. A copy of the Codicil was included in the record on appeal as Petitioner's Exhibit 3, yet the trial court stated that it would be "surplusage to enter [Exhibit 3] again as a new exhibit." *Tr*. at 81. Assuming without deciding that the trial court denied Donna's request to admit the Codicil and that such denial was an abuse of the trial court's discretion, we find that the absence of this exhibit in no way affected the fairness of the proceedings.

During the hearing, it was Donna's position that the Codicil's language provided a window through which the trial court could see Nancy's true intent regarding how payments should be made to Donna from the Trust. *Tr*. at 77. In other words, Donna believed that if her mother intended to leave the estate to her outright, then Nancy's intent under the Trust should be interpreted liberally, and Trust payments to Donna should be generous. *Id*. at 77, 79. During the hearing, Donna's attorney asked the Trustee, "Do you agree that if your sister hypothetically, in 2008, changed her Will to give everything to her

14

daughter Donna outright, then she certainly did not want a very restricted Trust back from 1999?" *Id.* at 25. Kane was also asked, "My question was you have not, at any time, in administering the Trust since January 2012 considered that your sister may not have wanted restrictions placed on giving money to your niece out of the trust." *Id.* at 25-26. The trial judge also recognized that the thrust of the Codicil's meaning was squarely before the court when he commented, "We've talked about it [the Codicil]. We've used it for the purposes that we needed." *Id.* at 81. Regardless of whether Petitioner's Exhibit 3 was actually admitted by the trial court, Donna's theory of the case was certainly before the court. Donna was not denied a fair trial.

Donna also contends that "[i]t was plain error for the court to totally reject Nancy's 2008 Instrument as a source of interpreting her testamentary trust, and for the court to rely instead on Thomas Kane's characterization of Nancy's alleged wishes." *Appellant's App.* at 24. This claim is merely a request that we reweigh the evidence, which we cannot do. *Nichols v. Estate of Tyler*, 910 N.E.2d 221, 226 (Ind. Ct. App. 2009). The trial court has the discretion to determine the crucial questions of intent and credibility. Here the trial court heard testimony from Donna and Kane regarding Nancy's intent under the trust. The trial court was well within its discretion to accept Kane's testimony that, based on his conversations with Nancy, the Trust was intended to supplement Donna's employment income and not replace it. While Donna may dislike the outcome, there is nothing in the record before us to show that this interpretation of the Trust was improper or incorrect. Here, the trial court did not commit reversible error.

15

### III. Imposition of Minimum Guidelines for Trustee

Donna is concerned that if she is unemployed through no fault of her own, the Trustee will pay her no more than $1,000 per month. She, therefore, contends that the trial court, acting in equity, should have directed the Trustee to pay all of Donna's reasonable living expenses during any future periods of Donna's reduced or minimal income.

Nancy's will gave Kane a great deal of discretion in the management of the Trust by instructing the Trustee to distribute so much of the trust principal to my daughter, in "the *Trustee's sole and absolute discretion* for her health and support taking into consideration all other income available to my daughter." *Appellant's App.* at 11. Nancy's will provided that "No interest of any Trust created by this instrument shall be assignable to my daughter or be subject during her life to the claims of her creditors, including alimony, property settlement, or support claims." *Appellant's App.* at 11. This language reflected Nancy's concern that assets in the Trust would be eroded by Donna's creditors. Donna's will instructed the Trustee to distribute so much of the trust principal to my daughter, in "the Trustee's sole and absolute discretion for her health and support taking into consideration all other income available to my daughter." *Id*.

Indiana Code section 30-4-3-24.4 provides that a trial court may modify the administrative or dispositive terms of a trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the Trust. "To the extent practicable, the modification must be made in accordance with the settlor's probable intention." Ind. Code § 30-4-3-24.4. This section, however, requires the existence of circumstances not anticipated by the settlor. *Kristoff v. Centier Bank*, 985 N.E.2d 20, 25

16

(Ind. Ct. App. 2013), *trans. denied*. The testimony before the trial court and the language governing the Trust reveal that Nancy, as the settlor, understood that Donna did not have a consistent work history and that she would owe creditors money. Indiana Code section 30-4-3-24.4 is therefore inapplicable. *See Kristoff*, 985 N.E.2d at 25 (I.C. § 30-4-3-24.4 is inapplicable where circumstances were anticipated by settlor). Here, there was no basis for the trial court to modify Kane's discretion under the Trust. The trial court did not abuse its discretion when it refused to modify the terms of the Trust. We, therefore, affirm the trial court's decision to deny Donna's petition to remove Kane as Trustee of the Trust.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.